**Robert Dale CALLAHAN, Plaintiff,**

v.

**Marion WOODS, Director, California Department of Social Services; Richard Schweiker, Secretary of Health and Human Services, Defendants.**

**No. C–78–1819 WHO.**

United States District Court, N.D. California.

Dec. 2, 1982.

Robbins, Marion M. Winstead and Harold S. Yates.

Alan Jaroslovsky, Deanna Beeler, California Rural Legal Assistance, Santa Rosa, Cal., for plaintiff.

George Deukmejian, Atty. Gen., State of California, Charlton G. Holland, Winifred Y. Smith, Deputy Attys. Gen., San Francisco, Cal., for defendants.

## OPINION AND ORDER

ORRICK, District Judge.

In this case the Court of Appeals reversed a finding by this Court that plaintiff's First Amendment right to the free exercise of his religion was not violated by state and federal requirements that he obtain a social security number ("SSN") for his daughter in order to receive public assistance benefits to which he would otherwise be entitled. The Court of Appeals then having found that plaintiff's belief in the literal interpretation of the "mark-of-the-beast" passages in the *Book of Revelation* was "religious" and thus protected by the Free Exercise Clause, remanded the case to this Court for a determination of the extent to which plaintiff's protected belief is burdened by the government's requirements in the light of *Thomas v. Review Board of the Indiana Employment Security Division,* 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), a Supreme Court case decided two years after this Court's decision in *Callahan,* and "whether the government here is following the 'least restrictive means of achieving some compelling * * * interest.'" *Callahan v. Woods,* 658 F.2d 679, 687 (9th Cir. 1981), *citing Thomas, supra,* 450 U.S. at 718, 101 S.Ct. at 1432.

For the reasons set forth below, this Court holds that although plaintiff's belief is indirectly burdened by the requirement that he obtain a SSN for his daughter as a precondition for the receipt of public assistance benefits, it is heavily outweighed by the government's compelling interest in requiring each aid recipient to have a SSN, and the Court further holds that this is the least restrictive means of achieving its all-compelling interest in administrative viability of administering the enormous social security program, including the Aid to Families With Dependent Children (AFDC), which affects 260,000,000 citizens who pay for the benefits and have SSNs. The case having been brought before the Court on cross-motions for summary judgment, and there being no genuine issues of material fact, the Court grants defendants' motion, denies plaintiff's motion, and orders defendants to submit an appropriate form of judgment by December 15, 1982.

I

A

Plaintiff, Robert Dale Callahan, seeks by this action to enjoin defendants, Marion

Woods, Director of the California Department of Benefit Services [1] ("the Director"), and Richard Schweiker, Secretary of Health and Human Services [2] ("the Secretary"), from requiring that he obtain a SSN for his daughter Serena in order to qualify for AFDC benefits to which his family is otherwise entitled, alleging that the SSN requirement violates his First Amendment right of free exercise of religion.

Plaintiff is married and has two young children. Because he is unemployed, his family is entitled to receive, and has received, AFDC benefit payments for both children. On May 10, 1977, the County of Sonoma notified him that benefits would terminate for his youngest child Serena for whom he had refused to obtain a SSN. Plaintiff requested a fair hearing before a hearing officer of the Director, and on June 8, 1977, the hearing officer found that, although plaintiff was sincere in his religious beliefs, federal regulations mandating the use of SSNs in the AFDC program required denial of plaintiff's claim. [3] This decision was adopted by the Director on July 13, 1977.

Pursuant to § 10962 [4] of the California Institutions & Welfare Code, plaintiff sought review of this decision by applying for a writ of mandate in state superior court. The Director moved for joinder of the Secretary on grounds that, in light of the above-cited regulations, the Secretary was the real party in interest. Once the Secretary was joined as a defendant, the action was removed to this Court pursuant to 28 U.S.C. § 1442(a)(1). [5]

**B**

Plaintiff, a member of the West Santa Rosa Baptist Church who claims to have a literal belief in the *Bible,* asserted that his refusal to comply with the SSN requirement for his daughter Serena was based upon his belief that the SSN is the "mark of the beast"—the sign of the Antichrist who threatens to control mankind. As the source of this view, plaintiff cited Chapter 13 of the New Testament *Book of Revelation,* which reads in part:

"16. [H]e causeth all, both small and great, rich and poor, free and bond, to

---

**1.** After the formation of the Department of Education, the name of the Department of Health, Education and Welfare was changed to the Department of Health and Human Services. Joseph Califano was succeeded by Richard Schweiker as Secretary of the Department of Health and Human Services. Accordingly, the Court *sua sponte* changes the instant case caption to "Richard Schweiker, Secretary of Health and Human Services."

**2.** The State of California has changed the name of the California Department of Benefit Payments to the California Department of Social Services. Accordingly, the Court *sua sponte* changes the instant case caption to "Marion Woods, Director, California Department of Social Services."

**3.** Section 402(a)(25) of the Social Security Act, 42 U.S.C. § 602(a)(25) requires:

"(a) A State plan for aid and services to needy families with children must * * * (25) provide (A) that, as a condition of eligibility under the plan, each applicant for or recipient of aid shall furnish to the State agency his social security account number (or numbers, if he has more than one such number), and (B) that such State agency shall utilize such account numbers, in addition to any other means of identification it may deter-

mine to employ in the administration of such plan."

**4.** Section 10962 of the California Welfare & Institutions Code provides:

"The applicant or recipient of the affected county, within one year after receiving notice of the director's final decision, may file a petition with the superior court, under the provisions of Section 1094.5 of the Code of Civil Procedure, praying for a review of the entire proceedings in the matter, upon questions of law involved in the case. Such review, if granted, shall be the exclusive remedy available to the applicant or recipient or county for review of the director's decision."

**5.** 28 U.S.C. § 1442(a)(1) provides:

"(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue."

receive a mark in their right hand, or in their foreheads;

17. And that no man might buy or sell, save that he had the mark, or the name of the beast, or the number of his name;

18. Here is wisdom. Let him that hath understanding count the number of the beast: for it is the number of a man; and his number *is* Six hundred three-score *and six.*"

Plaintiff maintained that although wisdom came too late to prevent him, his wife, or their first-born child from obtaining SSNs, his daughter Serena ought to be able to make that choice for herself and, accordingly, refused to participate in requiring her to take a number.

The defendants opposed the relief sought on two grounds: first, that plaintiff's objections to the use of SSNs were based upon a personal, secular philosophy rather than upon a religious belief; and, second, that even if plaintiff's beliefs were religious in nature and thus entitled to constitutional protection, the government had a compelling interest in the integrity of the social security system sufficient to overcome even the strong protection afforded by the First Amendment. In support of its position, the government submitted affidavits of two Health and Human Services officials, describing in detail the origins, use, and operation of the social security system in the AFDC program and asserting that the use of SSNs is essential to the orderly administration of the massive AFDC program.

The parties presented these issues in the context of cross-motions for summary judgment. The Court held an evidentiary hearing in which the plaintiff took the stand to testify as to the nature and origin of his beliefs. On the basis of that hearing, as well as the pleadings and affidavits previously filed, the Court found that plaintiff's belief in the moral impropriety of SSNs, though sincere, was not religious in nature, but rather represented a personal, secular philosophy which the plaintiff was attempting to buttress or justify with reference to biblical authority. *Callahan v. Woods,* 479 F.Supp. 621, 625 (N.D.Cal.1979). Accordingly, the Court held that plaintiff's beliefs were not entitled to the protection of the First Amendment and granted the defendants' motion for summary judgment.[6]

On remand the parties again filed cross-motions for summary judgment, and the Secretary presented additional evidence concerning the feasibility of a less restrictive alternative to the use of SSNs in the form of a supplemental affidavit of Harris G. Factor, Acting Director of the Office of Regulations, Social Security Administration, Department of Health and Human Services.

## II

### A

Before proceeding to a determination of the extent to which plaintiff's protected belief is burdened by the Secretary's regulation, and whether the requirement of SSNs as a precondition for receiving AFDC benefits is the least restrictive means of achieving some compelling government interest, the Court, as instructed by the Court of Appeals, commences its inquiry by a review of *Thomas.*

In *Thomas,* the Supreme Court expressly stated that where the state conditions the receipt of an important benefit upon conduct proscribed by an individual's religion,

---

**6.** The Court of Appeals, however, noted that there was some ambiguity in this Court's application of the two-part test of religiosity and sincerity, and observed that this Court's finding that Callahan's beliefs were "sincere" may have meant simply that Callahan sincerely objected to SSNs, but that these objections were purely secular in nature and had nothing to do with the religious reasons proffered. The Court of Appeals concluded, however, that this Court's finding of sincerity should be construed to mean that Callahan's religious belief, *i.e.,* his belief that SSNs were the "mark of the beast," were sincerely held and were in fact the basis of his objections to the SSN requirement. Given this interpretation, the Court of Appeals went on to find that the fact that Callahan's aversion to numbers may have a secular rather than religious origin was immaterial so long as he currently asserted a theological objection to the use of numbers.

thereby putting substantial pressure upon an adherent to modify his behavior in violation of his religious beliefs, a substantial, albeit indirect, burden is imposed upon religion; such a burden may be justified only upon a showing that the requirement is the least restrictive means of achieving some compelling government interest. The Court went on to hold that the denial of unemployment compensation benefits to a plaintiff who had voluntarily terminated his employment for religious reasons, on the grounds that such a termination did not satisfy the state statutory requirement of a "good cause" termination, violated the plaintiff's right to free exercise of religion. The Court reasoned that the interests asserted by the government, namely, avoiding the widespread unemployment that might result if individuals could leave their jobs for religious reasons, and avoiding probing by employers into job applicants' religious beliefs, were not sufficiently compelling to justify the substantial burden imposed upon plaintiff's religious beliefs.

### B

In the light of *Thomas,* the Court must first determine the extent to which the plaintiff's protected beliefs are burdened by the government regulations requiring that he obtain a SSN for his daughter as a prerequisite to obtaining AFDC benefits for her. The Secretary contends that the regulation imposes only an incidental or indirect burden upon plaintiff's religious beliefs, because the regulation is essentially neutral and secular in nature, and does not render unlawful any belief or practice of the plaintiff, but merely determines eligibility for participation in a voluntary government program. The Secretary further argues that if a secular regulation has an indirect impact upon religious beliefs, the validity of the regulation should be determined under a standard of review less rigorous than the "compelling interest" test applicable in cases where government regulations impose a direct burden upon religious beliefs. Plaintiff argues that the regulation at issue imposes a substantial burden upon his religious beliefs and, therefore, that the com-

pelling interest test must be applied, regardless of whether the burden is considered direct or indirect.

Upon a close scrutiny of *Thomas* and the cases examined *infra,* the Court concludes the government regulation here at issue imposes a substantial, albeit indirect, burden upon plaintiff's religious beliefs, and that the proper standard of review is, therefore, the compelling interest test.

In *United States v. Lee,* 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982), the Supreme Court relied upon *Thomas* and several earlier Supreme Court decisions for the proposition that the state may justify a limitation on religious liberty only by demonstrating that it is essential in order to accomplish an overriding governmental interest. The Court upheld the imposition of social security taxes upon an Amish employer who asserted that payment of social security taxes and the receipt of social security benefits violated his religious faith, on the grounds that the requirement that employers pay social security taxes was an essential means of accomplishing the overriding government interest in the fiscal viability and orderly administration of the tax system. The same rigorous standard of review was adopted in the only two reported decisions dealing with the identical claim presented by the plaintiff in this case, namely, that the SSN requirement violated the plaintiff's religious beliefs. In *Stevens v. Berger,* 428 F.Supp. 896 (E.D.N.Y.1977), Judge Weinstein held that the SSN requirement substantially impaired the plaintiff's religious beliefs, and thus that the requirement could be justified only by a demonstration that it was the least restrictive means of achieving a compelling government interest. The court in that case went on to find that the meager evidence submitted by the government in that case was insufficient to establish that the government interests asserted, namely, the prevention of welfare fraud and administrative convenience, were sufficiently compelling to justify the burden on the plaintiff's religious freedom. Finally, in *Mullaney v. Woods,* 97 Cal.App.3d 710, 158 Cal.Rptr. 902

(1979), the California Court of Appeal expressly adopted the compelling interest standard, although it concluded, contrary to the result in *Stevens,* that government interests in preventing fraud and promoting orderly administration of the system are compelling and that no less restrictive means of achieving those interests was feasible.

■ It is clear from the reasoning contained in the decisions above that the regulation at issue in this case, although essentially neutral and secular in nature, imposes a substantial burden upon the plaintiff's religious beliefs insofar as it conditions the receipt of an important government benefit—AFDC payments—upon conduct violative of the plaintiff's religious beliefs, and that such a burden can be justified only upon a showing that the SSN requirement is the least restrictive means of accomplishing a compelling government interest. Accordingly, the defendants' contention that a less rigorous standard of review should be adopted in evaluating the competing interests in this case must be rejected. Thus, this Court must now determine whether, on the basis of the evidence presented, the government has demonstrated that it has a compelling interest in requiring SSNs as a precondition for receipt of AFDC benefits sufficient to justify the burden imposed upon plaintiff's religious freedom.

## C

Plaintiff contends that the only governmental interests served by the SSN requirement, administrative convenience and the prevention of welfare fraud, are insufficient to justify the burden upon his religious beliefs, and further argues that the government has failed to demonstrate that the granting of a special exemption from the general requirement, or the utilization of an alternative system which would be less restrictive of the rights of persons holding religious objections to the use of SSNs, would seriously disrupt the orderly functioning of the system.

Defendants claim that, although the utilization of SSNs serves as a valuable tool in combating fraud and waste and in promoting administrative convenience, the primary government interest underlying the requirement is the very ability of the government to administer the program, and that, given the magnitude and complexity of the program, no less restrictive alternative would be feasible. In support of this position, the government has submitted the affidavits of two Health and Human Services officials, describing in great detail the origins, use, and operation of the social security system in the AFDC program.[7]

The affidavits submitted by the Secretary suggest that the use of a computerized data system using unique, numerical identifiers serves a variety of functions that are essential to the operation of the system. These include eligibility verification, proper check payment, and avoidance of benefit duplication or overpayment; coordination of the AFDC program with other federal programs such as Medicaid, the WIN program, and the Child Support Program; and the ability to exchange information with the states, which are the primary administrators of many welfare programs, and many of which, including California, use data processing systems to carry out this function. The use of SSNs has also proven to be an important tool in the detection and

---

7. *See* affidavit of Philip Harant, Director of the Division of Earnings Systems, Social Security Deputy Director of the Office of Regulations, Social Security Administration, Department of Health and Human Services filed April 10, 1979, in support of HEW's memorandum in opposition to plaintiff's motion for summary judgment and preliminary injunction and in support of its countermotion for summary judgment; and affidavit of Harris G. Factor, Acting Director of the Office of Regulations, Social Security Administration, Department of Health and Human Services, filed in support of the Secretary's memorandum in opposition to plaintiff's motion for summary judgment and preliminary injunction and in support of its countermotion for summary judgment, filed on April 10, 1979; and supplemental affidavit of Harris G. Factor, filed July 23, 1982.

prevention of welfare fraud, which has become a major problem in recent years. In fiscal 1977, for example, the Inspector General estimated that fraud, waste, and abuse accounted for payments of 669 million dollars. Of this sum, overpayments or payments to ineligibles amounted to 490 million dollars, including 300 million dollars attributable to insufficient or inaccurate income data. The Secretary has set before the Court an array of programs which, utilizing the common denominator of SSNs, are designed to combat this problem, and it appears that more such undertakings are anticipated in the near future.

The defendants have also presented evidence suggesting that, given the size and complexity of the AFDC program, some form of computerized data storage and retrieval system, based on unique, numerical identifiers, is necessary to enable the system to function. Through the social security numbering system, Health and Human Services maintains data on more than 260 million accounts, including workers, recipients, employers, states, and other entities. In fiscal 1978, over 6 billion dollars were expended in AFDC programs, covering a monthly average of over 3.5 million families. As an example of the compelling need for unique numerical identifiers, the Secretary has shown that, as of March 1, 1979, the social security system contained 59,621 Callahans, 924 Robert Callahans, and 42 Robert D. Callahans. According to the Secretary, there is no practical alternative to the use of SSNs that could be employed by the Secretary that would be less burdensome on individuals seeking special treatment because, even if a special identification system could be developed, the magnitude of the program would require that the special system be based on unique numerical identifiers for data management and administrative accountability of public funds. Finally, the Secretary asserts that changing to a nonnumerical system, on either a permanent or alternative basis, would be enormously costly and inefficient: conversion to such a nonnumerical system would cost in excess of 900 million dollars, and the establishment of a dual system, which would also require referencing and maintenance, would be an enormous financial and administrative burden.

■ Recognizing that the government's burden to defend a regulation which infringes on a plaintiff's religious liberty is a particularly heavy one, and that such a regulation must be subjected to the strictest scrutiny, the Court finds that the Secretary has successfully carried his burden in this case. The considerations noted above, and discussed in detail in the affidavits submitted by the Secretary, leave no doubt of the compelling need for SSNs in order to enable the system to function, and of the fact that, given the magnitude and complexity of the system, no alternative system that would be less restrictive of the rights of those holding religious objections to the use of such numbers would be feasible. This finding, which is based on the detailed factual information presented to this Court, is also supported by the relevant case law.

One of the only two reported decisions dealing with the issue of whether the Secretary can meet the compelling interest test so far as the use of SSNs is concerned reached contrary conclusions. The California Court of Appeal held in *Mullaney, supra,* that the state interest in maintaining the fiscal integrity of the social security system through preventing fraud and promoting orderly administration was sufficiently compelling to outweigh the burden imposed upon persons with religious objections to the use of numerical identifiers. The United States District Court for the Eastern District of New York in *Stevens, supra,* held that the government had not demonstrated a compelling interest in the use of SSNs sufficient to counterbalance the burdens imposed upon persons with religious objections to the use of numerical identifiers. That case is easily distinguishable from the case at bar. The only evidence before the court in *Stevens* pertaining to the government's interest in the use of

SSNs consisted of the testimony of a single witness who testified that SSNs were a useful tool in combating welfare fraud. The court observed that no evidence had been offered suggesting that use of some less restrictive alternative to deal with persons holding religious objections to the use of numerical identifiers would compromise the orderly administration of the state or national welfare program, or would present an administrative problem of such magnitude so as to render the statutory and regulatory scheme unworkable, and concluded that the utility of social security numbers in deterring welfare fraud was not in itself sufficient to satisfy the compelling interest test. In the instant case, by contrast, the government has presented an impressive array of evidence documenting the many important functions served by SSNs and demonstrating that the use of unique numerical identifiers is essential to the very function of the AFDC system.

The Supreme Court decision in *Lee, supra,* though dealing with a government regulation different from the one at issue in this case, supports the conclusion that the government may have a compelling interest in the administrative viability of its systems, and that the potential impact on the administration of the system may be substantial enough to counterbalance the burden upon religion imposed by a general regulatory scheme. The Court there held that the imposition of social security taxes upon an Amish employer whose religious beliefs prohibited participation in the social security program was justified on the grounds that such taxes were essential in order to maintain the economic and administrative viability of the tax system and that it would be too difficult to accommodate the myriad exceptions flowing from a wide variety of religious beliefs.

Finally, plaintiff's reliance on *Thomas, supra,* in which the Court held unconstitutional the denial of unemployment benefits to a person who had left his job for religious reasons, is distinguishable from the case at bar, as dealing with a situation involving significantly different government interests from those involved here. *Thomas* dealt with a requirement for eligibility for receipt of benefits—the state statutory requirement of a "good cause" termination—that constituted the substantive criteria for participation in a government program, but did not affect the fundamental administration of the system as a whole; thus the governmental interests asserted in that case, namely avoiding widespread unemployment and avoiding probing by employers into job applicants' religious beliefs, were different in nature and less far-reaching than the interests asserted here.

III

For the reasons stated above, the Court finds that the use of unique, numerical identifiers such as SSNs is essential to the administrative viability of the AFDC program, that, given the magnitude and complexity of the program, no alternative system that would be less restrictive of the rights of those persons holding religious objections to the use of such numbers is feasible, and that the government interest in the integrity of the AFDC program is sufficiently compelling to justify the burden which the SSN requirement imposes upon the plaintiff's religious beliefs. Accordingly, judgment is granted for the defendants in accordance with this Opinion, which shall constitute findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.