**UNITED STATES of America, Plaintiff,**

**v.**

**Robert GONZALES, Defendant.**

**No. CR95–438 JP.**

United States District Court,
District of New Mexico.

Jan. 31, 1997.

Peter Schoenburg, Rothstein, Donatelli, Hughes, Dahlstrom, Cron & Schoenburg, Albuquerque, NM, Gail J. Evans, Hannum & Evans, Albuquerque, NM, for Robert Peter Gonzales.

Jonathon M. Gerson, U.S. Attorney's Office, District of New Mexico; Albuquerque, NM, for U.S.

## *MEMORANDUM OPINION AND ORDER*

PARKER, District Judge.

The subject of this Memorandum Opinion and Order is defendant Robert Gonzales' "Motion to Dismiss (Number One) Based on Violation of Mr. Gonzales' First Amendment Rights" (Doc. No. 10) filed October 13, 1995. On January 4, 1996 and July 9, 1996, I held hearings at which the scope of Mr. Gonzales' standing to attack the statutes under which he is charged, as well as the relevant regulations, was discussed. By Order entered September 17, 1996, I ruled that Mr. Gonzales' "as applied" challenge is limited to those statutes and regulations at issue in this case as they were applied to him. He does not have standing to mount a broad attack on the administration of all the regulations. Specifically, he may challenge those parts of the

regulations that required him to submit an application for, and receive, a permit before killing an eagle and those that instructed him to include certain information on that application before receiving a permit. On December 4, 1996, I held a hearing on Mr. Gonzales' motion to dismiss. Jonathan Gerson represented the United States at the hearings. Peter Schoenburg and Gail Evans represented Mr. Gonzales. After thoroughly considering the pleadings, law, facts, and arguments of counsel, I conclude that Mr. Gonzales' motion should be granted and that the information against him should be dismissed.

*Background*

The facts of this case are simple. On February 7, 1995, Mr. Gonzales, a member of the San Ildefonso Pueblo, shot and killed a bald eagle. Mr. Gonzales does not deny shooting the eagle. He asserts that he was going to use the eagle carcass for an upcoming religious ceremony within the pueblo. The United States Attorney filed an information charging Mr. Gonzales with violating the Endangered Species Act, 16 U.S.C. §§ 1538 and 1540 (the "ESA"), the Bald and Golden Eagle Protection Act, 16 U.S.C. § 668(a) (the "BGEPA"), the Migratory Bird Treaty Act, 16 U.S.C. § 707(a) (the "MBTA"), and 50 C.F.R. §§ 10.13, 17.11, and 21.11.[1] In general, these laws make it illegal to kill a bald eagle. Congress has, however, carved out an exception allowing officially permitted killing of bald eagles for the religious purposes of Native Americans.

Mr. Gonzales contends that the statutes and regulations under which he is charged impinge on his rights under the First Amendment to the Constitution of the United States and also violate his rights under the Religious Freedom and Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb–2000bb–4. Because "a federal court should not decide federal constitutional questions where a dispositive nonconstitutional ground is available," *Hagans v. Lavine,* 415 U.S. 528, 547, 94 S.Ct. 1372, 1384, 39 L.Ed.2d 577 (1974), I do not reach Mr. Gonzales' First Amendment

---

**1.** 50 C.F.R. §§ 10.13 and 17.11 list the protected species while section 21.11 requires a permit in order to take, possess, or transport a protected

eagle. 50 C.F.R. §§ 22.1–23.32 are the regulations that concern the application and permitting process.

**1227**

argument. I base my decision solely on RFRA.

The United States argues that Mr. Gonzales lacks standing to challenge the statutes and regulations and, alternatively, that the laws he is attacking do not violate RFRA.

*Standing Analysis*

██ The United States takes the position that Mr. Gonzales lacks standing to raise a facial challenge to the laws in question because he testified during re-cross examination at the December 4, 1996 hearing that the alleged intrusiveness of certain questions contained on the application form used by the U.S. Fish and Wildlife Service in the process of issuing permits to Native Americans played no part in his decision to forego obtaining a permit before shooting the eagle on February 7, 1995.[2] Tr. 82. While Mr. Gonzales did testify to that effect on December 4, 1996, at the January 4, 1996 hearing he testified that one of the reasons he did not apply for a permit prior to shooting the eagle was that certain questions on the application form were intrusive and unduly pried into his religious life. Tr. 16.

Reconciliation of this conflicting testimony is not crucial to resolution of the standing issue. In the September 17, 1996 Order, I addressed Mr. Gonzales' "as applied" standing. I limited it to a challenge of the regulations that were being applied to him, namely the regulations requiring him to submit an application containing certain information, 50 C.F.R. §§ 22.22(a)(1)–(6). I now conclude that Mr. Gonzales may also mount a facial challenge to those regulations. The fact that Mr. Gonzales has been indicted is sufficient to confer standing on him to raise a facial challenge to the laws he is charged with violating. In order to have standing to make a facial challenge, Mr. Gonzales must demonstrate "injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury...." *INS v. Chadha,* 462 U.S. 919, 936, 103 S.Ct.

2764, 2776, 77 L.Ed.2d 317 (1983), *citing Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 79, 98 S.Ct. 2620, 2633, 57 L.Ed.2d 595 (1978). *See also Baca v. King,* 92 F.3d 1031, 1036 (10th Cir.1996). Mr. Gonzales' injury is the fact that he has been charged with crimes by information. *See United States v. Bozarov,* 974 F.2d 1037, 1040 n. 1 (9th Cir.1992) ("Bozarov has already been indicted, and thus has been directly injured by the statute that he claims is unconstitutional."), *cert. denied,* 507 U.S. 917, 113 S.Ct. 1273, 122 L.Ed.2d 668 (1993). If I dismiss the information, Mr. Gonzales' injury will be redressed in that the possibility of him being convicted will disappear. *See Bozarov,* 974 F.2d at 1040–41 ("Bozorov has unquestionably been injured ... and invalidation of [the statute in question] will prevent him from being convicted. He therefore has standing to [raise a facial challenge].").

Under the peculiar facts of Mr. Gonzales' case, where he did not submit an application for a permit before shooting the eagle, a facial challenge and an "as applied" challenge to 50 C.F.R. §§ 22.22(a)(1)–(6) are virtually identical. Mr. Gonzales has standing to mount both a facial and "as applied" challenge to 50 C.F.R. §§ 22.22(a)(1)–(6).[3] In this case, for either of the alternatives, my analysis and conclusion are the same.

*RFRA Analysis*

RFRA was enacted to counter the opinion of the Supreme Court of the United States in *Employment Div. v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). In sum, RFRA codified pre-*Smith* First Amendment jurisprudence. Under RFRA, the government cannot place a substantial burden on a person's exercise of religion unless "that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb–1(b).

---

**2.** At the December 4, 1996 hearing, I directed counsel for the parties to focus their presentation of evidence on the "least restrictive means" analysis under RFRA to two regulations—50 C.F.R. §§ 22.22(a)(4) & (6), and the accompanying questions posed on the application form.

**3.** Mr. Gonzales' "as applied" standing continues to be limited by my September 17, 1996 Order.

In order to succeed in his challenge, Mr. Gonzales must first show that the statutes and regulations at issue place a substantial burden on his exercise of religion. I conclude that he has made that showing. At the December 4 hearing, Mr. Gonzales presented considerable evidence through various witnesses, including himself and Professor Alfonso Ortiz, that 50 C.F.R. §§ 22.22(a)(4) & (6), the regulations requiring Mr. Gonzales to state on an application the name of the tribal religious ceremony for which he seeks an eagle and requiring him to obtain certification from a religious elder to the effect that he is authorized to participate in that ceremony, constitute a substantial burden on his exercise of his religion. The religious ceremonies in which Mr. Gonzales participates are very secretive. Requiring him to state, on a public record, the name of that secret ceremony substantially burdens the practice of his religion by forcing him to disclose confidential information of a nature sacred to him. Likewise, requiring Mr. Gonzales to obtain religious elder certification is also substantial burden. Acquiring that certification makes Mr. Gonzales ask an elder to disclose to the world the elder's position within the secret religious group. That disclosure is anathematic to Mr. Gonzales' religion.

Based on this evidence, I conclude that 50 C.F.R. §§ 22.22(a)(4) & (6) impose a substantial burden on Mr. Gonzales' practice of his religion.[4] In making this narrow finding, I do not determine whether the application/permit process as a whole is a substantial burden on Mr. Gonzales' practice of his religion. My decision is limited to a determination that 50 C.F.R. §§ 22.22(a)(4) & (6) both impose a substantial burden on Mr. Gonzales' practice of his religion.[5]

This ruling leads to the next step which requires the United States to make a showing that the burden imposed on Mr. Gonzales is in furtherance of a compelling governmental interest. I conclude that the United States has satisfied that requirement. At the December 4, 1996 hearing the United States proffered the testimony of Dr. James Lewis, an Endangered Species Biologist with the United States Fish & Wildlife Service. Dr. Lewis was subjected to cross-examination at the hearing. Dr. Lewis testified about the government's compelling interest in preserving the bald eagle including sustaining the national symbol of the United States of America and ensuring biodiversity and healthy ecosystems. Proffer at ¶ 9. Dr. Lewis also noted that bald eagles had recently been reclassified by the Fish & Wildlife Service from endangered to threatened but that, as a threatened species, bald eagles could become endangered in the very near future. Tr. 141–42. Because of the precarious nature of the bald eagle's survival and because of the importance of that survival to our nation, I conclude that the government has shown that the substantial burden it placed on Mr. Gonzales' practice of his religion is in furtherance of a compelling governmental interest—that being the propagation and survival of the bald eagle.

The United States must next show that the burden imposed on Mr. Gonzales is the least restrictive means by which to further its compelling interest. I conclude that 50 C.F.R. §§ 22.22(a)(4) & (6) and the related questions on the application form are not the least restrictive means by which the government can further its compelling interest. The United States argues that those regulations and application questions are necessary to ensure that the person receiving an eagle permit is a Native American and is authorized to participate in the ceremony during which the eagle will be used. I do not find that argument persuasive.

---

4. Mr. Gonzales also testified that 50 C.F.R. § 22.22(a)(5) substantially burdened his religion. That regulation requires an applicant to obtain certification from the Bureau of Indian Affairs that the applicant is an "Indian." Because this information is a matter of public record and does not implicate Mr. Gonzales' practice of his religion, I conclude that 50 C.F.R. § 22.22(a)(5) does not impose a substantial burden on Mr. Gonzales' practice of his religion.

5. By limiting my decision to 50 C.F.R. §§ 22.22(a)(4) & (6), I am not reaching the question of whether the ESA, the BGEPA, or the MBTA, which the regulations implement, violate RFRA. I do note, however, that the statutes do not compel the government to obtain the information the regulations exact from an applicant.

According to Government Exhibit 1A, a form of the application, each applicant is required to certify under criminal penalty of 18 U.S.C. § 1001 that the information contained in the application is true.[6] This requirement is sufficient to protect the government's compelling interest. Requiring each applicant to include the name of the religious ceremony in which the eagle will be used and religious elder certification may provide some additional indicia of reliability that the eagle will be used in a Native American religious ceremony, but those requirements are not the least restrictive means by which the government can protect its interest. Instead of imposing those two very intrusive requirements, the government can simply require each applicant to swear under penalty of criminal prosecution for perjury that the applicant will use the eagle in a Native American religious ceremony in which the applicant is qualified to participate.[7]

The United States argues that in performing a least restrictive means analysis I must look at the impact on the government's compelling interest that would follow from exempting all Native Americans from the application/permit process. The United States contends that *Callahan v. Woods,* 736 F.2d 1269 (9th Cir.1984), and its progeny mandate such an analysis. I do not read *Callahan* to require this. The United States Court of Appeals for the Ninth Circuit wrote that "[w]e now turn to the most critical aspect of our free exercise inquiry: the extent to which exempting Callahan from the SSN requirement would impede the goal of administrative efficiency." *Callahan,* 736 F.2d at 1274. The court further found that

> [b]ecause it did not have the relevant facts before it, the district court could not properly have found that exempting Callahan from the SSN requirement would be incompatible with the government's efficient operation of the AFDC program. Such a finding is a prerequisite to the conclusion

that the SSN regulation is the least restrictive means of furthering a compelling state interest.

*Callahan,* 736 F.2d at 1275. Similarly, in *United States v. Thirty Eight Golden Eagles,* 649 F.Supp. 269, 276 (D.Nev.1986), Chief Judge Edward C. Reed, Jr. noted that the *Callahan* court "found that the affidavits submitted with the summary judgment motion failed to address the potential cost of exempting one person from the [social security] numbering system." *Callahan* does not require evaluating the impact that exempting all Native Americans from the application/permit process would have on the government's compelling interest. Instead, I need only look at Mr. Gonzales.

My ruling does not exempt any Native American from complying with the application process, except Mr. Gonzales in the context of this prosecution. My ruling is simply that requiring an applicant to name specifically the religious ceremony at which an eagle will be used and further requiring religious elder certification are not the least restrictive means by which the government can further its compelling interest. Native Americans will still need to apply for an eagle permit but they will not be required to provide the information demanded by 50 C.F.R. §§ 22.22(a)(4) & (6).

Even if I were to conduct the analysis suggested by the United States, I would find little or no impact on the government's compelling interest by exempting all Native Americans from submitting the information described in 50 C.F.R. §§ 22.22(a)(4) & (6). Native Americans would still have to apply for, and obtain, a permit to take, possess, or transport protected eagles. Applicants would still be required to obtain BIA certification that they are, in fact, Native American. Additionally, applicants would need to certify, subject to criminal penalties, that the eagle applied for would be used in a Native

---

**6.** Government Exhibit 2, another form of the application, does not contain a certification requirement. It is unclear which iteration of the application was in use at the time Mr. Gonzales shot the eagle. The fact that Government Exhibit 1A contains the certification requirement, however, is strong evidence that including such a requirement on the application is quite practicable.

**7.** The current BIA certification that the applicant is Native American will satisfy the government's need to ensure that the applicant is, in fact, Native American.

American religious ceremony in which the applicant is qualified to participate.

Finally, merely because an application is submitted does not mean that an applicant automatically will receive a permit to take, possess, or transport an eagle. The Fish and Wildlife Director will issue a permit only if the Director concludes that issuing the permit "is compatible with the preservation of the bald or golden eagle." 50 C.F.R. § 22.22(c). Fish and Wildlife's knowledge about the applicant's specific religious practices appears to be irrelevant—the Director will not issue a permit unless the Director determines that issuing a permit is compatible with preserving eagles regardless of the detail concerning an applicant's religious practices.

Because 50 C.F.R. §§ 22.22(a)(4) & (6) are not the least restrictive means by which the government can further its compelling interest, the information against Mr. Gonzales should be dismissed.

IT IS THEREFORE ORDERED that defendant's motion to dismiss is GRANTED and the information against him is dismissed with prejudice.