[Civ. No. 28703. Fourth Dist., Div. One. Oct. 12, 1984.]

STEPHEN BEST, Plaintiff and Appellant, v.
CALIFORNIA APPRENTICESHIP COUNCIL,
Defendant and Respondent;
SAN DIEGO COUNTY ELECTRICAL JOINT APPRENTICESHIP
TRAINING COMMITTEE, Real Party in Interest and Appellant.

**COUNSEL**

Peter John Uzzi, Stanford H. Atwood, Jr., and Atwood, Hurst & Knox for Plaintiff and Appellant.

Hughes, Hubbard & Reed, William T. Bisset, Lois C. Moonitz, Corbett, Steelman & Davidson, Peter John Marshall, Fred Okrand and Gilbert Gaynor as Amici Curiae on behalf of Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Ludecke, McGrath & Denton, L. William McGrath, Jr., Luce, Forward, Hamilton & Scripps and Richard N. Freeman for Real Party in Interest and Appellant.

**OPINION**

**WORK, J.**—Stephen Best appeals a judgment denying him a writ of mandate to set aside the decision of the California Apprenticeship Council

(CAC) suspending and dismissing him from a job training program. CAC asks us to dismiss this appeal because Best has now graduated from the program and the conditions under which the punitive action against him was taken no longer exist. We decline to do so because the issue of failure to accommodate a trainee's sincerely held religious belief is one which may reoccur. We reverse with directions.

## BACKGROUND

The Joint Apprenticeship Training Council (JATC) operates the only apprenticeship program leading to certification as a journeyman electrician in San Diego and Imperial Counties. It is governed by standards approved by the CAC, a state agency. Apprenticeship training under JATC consists of a four-year program of instruction and supervised employment at a variety of jobsites.

JATC is operated by a committee of representatives of Local 569 of the International Brotherhood of Electrical Workers and the San Diego County Chapter of National Electrical Contractors Association, Inc. It assigns jobs to apprentices, rotating them occasionally to insure they receive comprehensive training before being certified.

Numerous employers participate in JATC's program, and apprentices work only for some of them during training. One participating employer in the JATC program is Bechtel Corporation, whose only work in San Diego County relates to the San Onofre Nuclear Generator Station (SONGS). Bechtel has been constructing units II and III of SONGS. (Unit I is a completed nuclear reactor, functioning on those occasions when it is not shut down for refueling, maintenance or repair.) An assignment to SONGS was unpopular among apprentices in the JATC program, primarily because commuting time from the most populated parts of San Diego County is extremely long. JATC felt Bechtel was not getting its fair share of apprentices as a result of this unpopularity, and because relatively few apprentices accepted this assignment, those who were sent to SONGS were staying there too long. To remedy the situation, JATC assigned all third and fourth year apprentices to SONGS.[1]

When Best was assigned to SONGS, he sought an exemption based on his religious belief it would be a sin to participate in constructing a nuclear power plant, and also based on concerns for his own safety because of exposure to constant low-level radiation. JATC denied the request and voted to suspend Best for 60 days and terminate his participation in the appren-

---

[1]This rule was adopted two years after Best entered the apprenticeship program.

ticeship program. Best appealed this disciplinary decision. The evidence at the administrative hearing showed Best was a devout Roman Catholic, whose studies of the issues of nuclear power led him to reasonably conclude commercial nuclear power threatens the environment and future generations. The administration found, on uncontradicted evidence, Best holds a sincere religious belief that participating in constructing a commercial nuclear power plant is an immoral act. Father Michael Kennedy, a Catholic priest at the church Best attends, testified it would be a sin for a Catholic with Best's knowledge and opinions on the subject of nuclear power to work for Bechtel at the SONGS site.

The administrator found the rule applied by JATC requiring third and fourth year apprentices to be rotated for a period of time to SONGS was reasonable as a general policy, but JATC unreasonably applied its policy to Best, because in doing so it ignored his religious beliefs and his legitimate concern for his own safety.

JATC appealed the administrator's decision to the CAC. Without taking additional evidence, the hearing panel of CAC, in a two to one decision, adopted the following findings and conclusions:

"1. In August, 1977, complainant Tyme[2] entered appellant's apprenticeship program. His anticipated completion date was August 1, 1981.

"2. In February, 1979, complainant Stephen Best entered appellant's apprenticeship program. His anticipated completion date was February 1, 1983.

"3. The apprenticeship program has, since 1948, included provisions for the rotation and transfer of apprentices between various employers.

"4. The rationale behind the rotation policy is to afford apprentices both diversified training and continuous employment as well as to meet the needs of employers who have been qualified to train apprentices by the JAC [JATC].

"5. The JAC relied on its authority to rotate apprentices in calculating the number of apprentices to train each year, based on a balance between the need for apprentices of qualified employers in the industry and the obligation of the JAC to see that registered apprentices are continuously employed in placements which afford diversified training.

---

[2]Tyme was a Hindu in the JATC program who was also precluded by his religious beliefs from accepting a SONGS assignment. JATC accommodated Tyme after the hearing and he is no longer a party to this case.

"6. Upon entering the apprenticeship program, all apprentices are informed of the JAC's procedure of rotating employees to different employers. Both complainants acknowledged that they had been aware of this procedure and that they might well be rotated to Bechtel. Both had accepted rotations prior to their rotation to Bechtel's San Onofre Nuclear Generator Station (SONGS) which is at issue herein.

"7. In September, 1980, the decision was made by the JAC that all third and fourth year apprentices would be rotated to SONGS. This was based on the need to (1) afford all apprentices diversified training, (2) provide Bechtel a reasonable number of apprentices and (3) to reduce the average length of stay at Bechtel, which, due to a three-hour commute, was less desirable than other placements.

"8. In February, 1980, complainant Best was to be rotated to Bechtel. In September, 1980, complainant Tyme was one of sixteen apprentices to be rotated to Bechtel.

"9. After learning that he was to be rotated to Bechtel, Tyme met with Paul Blackwood, business manager of the local union and JAC member to seek an alternative rotation based on moral, spiritual and health and safety grounds mentioning that Fred Underhill had previously granted him an alternative job placement without the knowledge and assurance of the JAC as a whole. Mr. Blackwood did not make an alternative job placement. Approximately two weeks later the JAC authorized an alternative job placement pending the outcome of a hearing before the full JAC. Although Tyme was not employed for these two weeks, he had not been suspended or otherwise disciplined.

"10. On October 6, 1980, Tyme appeared before the JAC and presented his case. The JAC expressed a concern that excusing an apprentice from an undesirable station might pave the way for other apprentices to request similar exceptions. At this meeting, the JAC offered to allow Tyme to work at Bechtel for only three months, which Tyme declined.

"11. In early November, 1980, the JAC voted at its next meeting not to grant Tyme's request. By letter dated November 6, 1980, the JAC informed Tyme that if he did not accept the Bechtel dispatch, he would be placed on sixty days' suspension and the JAC would recommend to the administrator that his apprenticeship agreement be cancelled. Tyme did not accept the Bechtel dispatch and the disciplinary action was imposed.

"12. On December 9, 1980, Tyme filed a complaint with the administrator.

"13. By letter dated March 2, 1981, the administrator informed the JAC that he denied their recommendation to cancel Tyme's apprenticeship agreement.

"14. In late March, 1981, Tyme was returned to employment by the JAC after an agreement was reached between the parties and approved by DAS for the dispatch of complainant to an alternative site.

"16. Complainant Best testified that he became aware of his rotation to Bechtel some time in the middle of January, 1981. Best expressed his objection to working at the SONGS site. In addition, in April, 1980, Best had discussed his concern over a possible rotation to SONGS with JAC member England, his apprentice instructor.

"17. On February 16, 1982, the effective date of his rotation to Bechtel, Best was requested to appear at that evening's JAC meeting to present his case. He expressed his concern over the health risks and that his participation in the construction of nuclear energy plants would be contrary to his beliefs. He informed the JAC that he is a Catholic. The JAC decided that Best be suspended for a period of sixty days and a recommendation be made to the administrator that his apprenticeship agreement be canceled. When the sixty days' suspension period had run, the JAC directed that he be dispatched to an alternative site pending the outcome of this appeal.

"17. Both complainants had sincerely held beliefs that nuclear power plants posed health and safety risks to workers on the site and to the public in close proximity to the plants.

"18. Both complainants had sincerely held religious beliefs that would be contravened were they to work at the SONGS site.

"19. The SONGS site was continuously being inspected and monitored by nuclear regulating commissions and other government agencies. Such inspections did not reveal any uncorrected safety or health violations or hazards.

"20. The apprentices were dispatched to two units under construction, not to the unit housing the nuclear reactor.

"CONCLUSIONS

"1. The JAC may legally adopt a rule and regulation which, in effect, requires all apprentices to serve a period of employment at SONGS as part of their training.

"2. In enforcing its rules, the JAC is required under 8 California Administrative Code section 201(b) to act fairly and reasonably. As such, a JAC may not implement a policy in which no exceptions to any JAC procedure would be made. More specifically, any JAC policy providing that no exceptions to the rotation policy may be made, violates 8 California Administrative Code section 201(b).

"3. The JAC had the discretion to reject complainants' requests to be exempted from a rotation to the SONGS site because, despite the sincerity of complaints moral and spiritual convictions and beliefs, by rotating them to the SONGS site, the JAC was not imposing on them an undue risk to their health and safety or an undue hardship.

"4. The JAC is bound by the provisions of Government Code section 12940(c), which prohibits discrimination against any person in apprenticeship training programs.

"5. In rejecting complainants' requests to be exempted from a rotation to the SONGS site, the JAC did not violate Government Code section 12940(c). The JAC had the discretion to balance the interests of the apprenticeship program against the wishes of individual apprentices in deciding whether exemptions from procedures is [*sic*] appropriate. Therefore, the JAC in its discretion could have, and did deny complainants' requests for exemptions.

"6. The JAC afforded complainants adequate due process and procedural fairness in taking disciplinary action against complainants.

"7. The JAC did not abuse its discretion in suspending complainants for a period of sixty days because a suspension of such duration was allowed by Title 8, California Administrative Code, section 213. The apprenticeship rules and regulations were subject to modification based on changes in the applicable regulations.

"8. The JAC did not violate the provisions of section 7 of the National Labor Relations Act (NLRA), 29 U.S.C. section 157, by denying complainants' request for an exemption from being rotated to SONGS. In doing so, the JAC did not retaliate against complainants for exercising their rights under section 7 of the NLRA." The CAC hearing panel reinstated the JATC's disciplinary action.

Best's petition for writ of mandate was denied by the trial court.

## DISCUSSION

### *Standard of Review*

The parties dispute the standard of review the trial court should have applied. Code of Civil Procedure section 1094.5, subdivision (c) provides: "Where it is claimed that the findings [of an administrative board] are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence; and in all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record."

The dispute here is whether the court was "authorized by law" to exercise its independent judgment on the evidence. Labor Code section 3083 states: "The decision of the California Apprenticeship Council as to the facts shall be conclusive if supported by the evidence and all orders and decisions of the California Apprenticeship Council shall be prima facie lawful and reasonable."

■ While Best argues this statute is ambiguous, it clearly is a direction by the Legislature to the courts to use a substantial evidence standard of review on CAC decisions. It would thus appear the courts are not "authorized by law to exercise" independent judgment. (Code Civ. Proc., § 1094.5.)

However, under either standard of review, the trial court should have issued the writ overturning CAC's ruling and reinstating the administrator's ruling. We assume for purposes of this appeal the substantial evidence standard was the appropriate standard of review.

### *JATC Had a Legal Duty to Accommodate Best's Religious Beliefs*

■ CAC found Best "had sincerely held religious beliefs that would be contravened were [he] to work at the SONGS site." There is no factual issue on this appeal regarding the nature of Best's sincere religious beliefs against working on the construction of a nuclear power plant.

JATC's claim it has no obligation to accommodate Best's religious beliefs runs afoul of statutory and constitutional law.

Government Code section 12940 provides: "It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification,

or, except where based upon applicable security regulations established by the United States or the State of California:

"... . . . . . . . . . . . . . . . . . . . . . .

"(c) For any person to discriminate against any person in the selection or training of that person in any apprenticeship training program or any other training program leading to employment because of the race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, or sex of the person discriminated against." CAC correctly concluded JATC is bound by Government Code section 12940, subdivision (c), but erred as a matter of law by concluding JATC had the discretion to reject Best's request for exemption from rotation to SONGS despite the sincerity of his moral and spiritual convictions because JATC "was not imposing on [Best] an undue risk to [his] health and safety or an undue hardship." Even if the evidence supported a factual conclusion Best's personal health was not endangered by a SONGS assignment (it does not), it cannot discriminate against Best on account of his religious beliefs in violation of Government Code section 12940, subdivision (c).

CAC found JATC did not violate Government Code section 12940, subdivision (c) because JATC "had the discretion to balance the interests of the apprenticeship program against the wishes of the individual apprentices in deciding whether exemptions from procedures is [*sic*] appropriate. Therefore the [JATC] in its discretion could have, and did deny complainants' requests for exemptions." However, CAC does not explain where JATC derives the authority to discriminate against Best because of his religious beliefs to further the interests of its apprenticeship program. Nothing in the statute confers such authority on JATC; on the contrary, it specifically forbids discrimination on religious grounds for any reason.

Our conclusion JATC was required to accommodate Best's religious beliefs is supported by *Anderson* v. *General Dynamics Convair, etc.* (9th Cir. 1978) 589 F.2d 397, applying a federal statute analogous to Government Code section 12940, subdivision (c) to require a labor union and employer to accommodate an employee whose religious beliefs precluded him from joining the union.

JATC contends it is not an "employer" and Best's remedy was to accept the assignment, make the lengthy trip to the SONGS site, and upon learning what everyone already knew—the only assignment Bechtel had for Best would violate his religious beliefs—refuse the assignment, and raise his objection if Bechtel failed to accommodate his religious beliefs. JATC states "if the Bechtel Corporation was unable to accommodate Petitioner, it would

have sent Petitioner back to the JATC for reassignment. If the JATC had refused to then send Petitioner out to another employer, it would have been guilty of violating the express terms of the Apprenticeship Agreement."

This argument misses the mark in two respects. First, in attempting to construe the statute to apply only to "employers," and in claiming it is not as an "employer," JATC disregards the plain language of Government Code section 12940, subdivision (c). JATC is clearly a "person" within the meaning of the statute, who conducts an apprenticeship program in which Best was then enrolled.

Second, the record conclusively shows all parties knew Bechtel had no nonnuclear assignments to offer; sending Best to San Onofre at all would have been a futile act.

The recent case of *Callahan* v. *Woods* (9th Cir. 1984) 736 F.2d 1269, is analogous. In *Callahan,* the plaintiff was eligible for welfare payments under the aid to families with dependent children program. However, acting under a federal regulation, the state agency administering the program required all recipients and their children to obtain Social Security numbers. Obtaining a Social Security number was against Callahan's religious beliefs. The Ninth Circuit reversed summary judgment for the government.

*Callahan,* summarizing a number of case authorities in First Amendment law, applied a three-prong test. First, the court considered the magnitude of impact of the challenged practice on the petitioner's right to free exercise of religious beliefs. The court stated: "A substantial burden is justified only by a showing that the requirement is the least restrictive means of achieving some compelling government interest. [Citation.]" (*Callahan, supra,* at p. 1273.) Second, having found a significant impact on the petitioner's free exercise rights, the court considered whether a compelling state interest existed to justify the challenged practice. Finally, finding a compelling state interest in a practice having a significant and adverse impact on the petitioner's religious rights, the court considered the extent to which exempting Callahan from the requirement he found objectionable would impede the interest served by the rule requiring a Social Security number. The *Callahan* court found both a significant adverse impact of the Social Security number requirement on Callahan's right to religious freedom, and a compelling state interest served by the challenged rule. However, it concluded if individual accommodation of Callahan's beliefs would not impede the compelling interest served by the regulation, he would have to be exempted.

Applying this test, it is clear that forcing Best to participate in the construction of a commercial nuclear power plant seriously infringes on his

right to exercise religious freedom. His priest testified it would be a sin for Best, a devout Catholic, holding such beliefs about nuclear power, to participate in the construction of a nuclear power plant. Thus, what JATC attempted to do, acting under color of state authority, was to force Best to commit a sin as a precondition of pursuing his chosen occupation.

Turning to the second prong of the *Callahan* test, we conclude a compelling state interest is served by a scheme of requiring apprentices in trades to meet standards under the administration of a competent body of experts before being certified in their trade. However, a rule requiring all apprentices to work for a particular private corporation does not appear to serve any state interest, where the training available under said corporation is also available under other employers at other sites. Here, the uncontradicted testimony shows the training in industrial wiring Best would have received at the SONGS site was readily available elsewhere. While we recognize JATC's legitimate concern Bechtel be treated fairly in receiving a fair share of apprentices along with other employers participating in the program, such interest does not justify denying any individual's religious freedom.

JATC's contention it simply has no duty to accommodate the religious beliefs of apprentices is unsupported by analysis, facts, or law. JATC does not and cannot deny its attempt to discipline Best for refusing the SONGS assignment was made under color of state authority; indeed, the disciplinary action was subject to approval by a state agency, CAC.

JATC argues there is no evidence of discriminatory *motive* in the SONGS assignment given Best because he was assigned to SONGS under a policy applied equally to all apprentices. However, discriminatory *motive* is not the determining factor. Although JATC did not target Best for a SONGS assignment because of his Catholic beliefs in order to drum him out of the program, Best's right to religious freedom may not be disregarded. It is well settled an individual's religious beliefs must be accommodated even where it means making an exception to a rule which is reasonably applied to other individuals with different beliefs. (See *Callahan* v. *Woods, supra,* 736 F.2d 1269, and cases cited.)[3]

No substantial evidence supports the trial court's determination that there is sufficient evidence to support CAC's decision. Its decision is reversed.

---

[3]Because the resolution of this issue disposes of the case, we do not address Best's claim of error regarding his personal safety defense.

The superior court shall issue its writ vacating CAC's decision and order it to adopt that of the administrator.

Wiener, Acting P. J., and Butler, J., concurred.

A petition for a rehearing was denied November 7, 1984, and the petition of real party in interest and appellant for a hearing by the Supreme Court was denied January 3, 1985. Mosk, J., and Lucas, J., were of the opinion that the petition should be granted.