[No. A069828. First Dist., Div. Five. Oct. 2, 1996.]

EUGENE LUMPKIN, JR., Plaintiff and Appellant, v.
FRANK M. JORDAN, as Mayor, etc., et al., Defendants and Respondents.

1224

## COUNSEL

James D. Struck and Brad C. Dacus for Plaintiff and Appellant.

Louise H. Renne, City Attorney, Dennis Aftergut, Chief Assistant City Attorney, Thomas J. Owen and Julia M. C. Friedlander, Deputy City Attorneys, for Defendants and Respondents.

## OPINION

CHAMPLIN, J.*—Reverend Eugene Lumpkin, Jr. (Reverend Lumpkin) appeals after Mayor Frank Jordan (Mayor Jordan) and the City and County of San Francisco (the City) successfully demurred to his complaint.[1] The trial court concluded that the issues raised by Reverend Lumpkin's complaint had been fully litigated in a prior federal action involving the same

---

*Judge of the Napa Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]Reverend Lumpkin appeals from the order sustaining the demurrer without leave to amend. An order sustaining a demurrer is not an appealable order. The appeal must come

parties and, therefore, that Reverend Lumpkin was collaterally estopped from relitigating them. Reverend Lumpkin contends that the record fails to establish that the identical issues were necessarily decided in the prior federal action. He further argues that the trial court abused its discretion in applying collateral estoppel to this case. We affirm.

*Background*

This case concerns the alleged unlawful removal of Reverend Lumpkin from the City's human rights commission (the Commission). The events leading up to Reverend Lumpkin's removal are not in dispute. On August 13, 1992, Mayor Jordan, then mayor of the City, appointed Reverend Lumpkin to serve as a member of the Commission. At the time of his appointment, Reverend Lumpkin was a Baptist minister who served as pastor of the Ebenezer Baptist Church. Mayor Jordan and Reverend Lumpkin had known one another for over 15 years and, at the time of the appointment, Mayor Jordan was aware that Reverend Lumpkin was a Baptist minister.

On June 26, 1993, the San Francisco Chronicle quoted Reverend Lumpkin as saying: "It's sad that people have AIDS and what have you, but it says right there in the scripture that the homosexual lifestyle is an abomination against God. So I have to preach that homosexuality is a sin." (White, *History of Hostility*, S.F. Chronicle (June 26, 1993) p. A1.) These remarks provoked a public controversy surrounding Reverend Lumpkin's membership on the Commission.

On July 13, 1993, after meeting with Reverend Lumpkin, Mayor Jordan issued a press release announcing that he would not remove Reverend Lumpkin from the Commission. In this statement, Mayor Jordan stated that Reverend Lumpkin "has a solid and unambiguous record as a member of the Human Rights Commission. As a commissioner he has protected and advanced gay and lesbian civil rights."

In reaction to Mayor Jordan's announcement, the San Francisco Board of Supervisors adopted a resolution on July 19, 1993, calling for Reverend Lumpkin's resignation or removal from the Commission. The resolution

---

from the judgment dismissing the complaint. (Code Civ. Proc., § 904.1.) No dismissal appears in the record before us. However, the case has been fully briefed and to dismiss the appeal at this stage would be a waste of judicial and litigant resources. Therefore, in the interests of justice and to prevent unnecessary delay, we deem the order sustaining the demurrer to incorporate a judgment of dismissal and treat Reverend Lumpkin's notice of appeal as applying to the dismissal. (*Nowlon* v. *Koram Ins. Center, Inc.* (1991) 1 Cal.App.4th 1437, 1440-1441 [2 Cal.Rptr.2d 683].)

demanded that Mayor Jordan "restore public confidence in the role and mission of the Commission, especially with regards to the ability of the Commission to consider complaints and lead the community toward equality and respect for all lesbian and gay San Franciscans."

On August 20, 1993, Reverend Lumpkin was interviewed during a live broadcast of a television news show, *Mornings on 2*. After the interviewer identified Reverend Lumpkin as a member of the Commission, he asked him if he believed homosexuality to be an "abomination." Reverend Lumpkin replied, "Sure, I believe, I believe everything the Bible sayeth." The following exchange ensued:

"Interviewer: Leviticus also says that a man who sleeps with a man should be put to death. Do you believe that? Reverend Lumpkin: That's what it sayeth. Interviewer: Do you believe that? Reverend Lumpkin: That's—I said that's what the Book sayeth."

Later that day, after learning of the interview, Mayor Jordan asked Reverend Lumpkin to resign from the Commission. In a press release explaining his decision, Mayor Jordan stated: "While religious beliefs are constitutionally protected and cannot be the grounds to remove anyone from elected or appointed public office, the direct or indirect advocacy of violence is not, cannot and will not be condoned by this administration . . . . On the grounds of religious freedom and an unblemished record as a Human Rights Commissioner, I have supported Reverend Lumpkin for holding fundamentalist beliefs which are not my own. We part company when those beliefs imply that attacks against anyone can be justified by the scripture or on any other grounds."

On August 23, 1993, Mayor Jordan met with Reverend Lumpkin, who refused to resign. After this meeting, Mayor Jordan announced his decision to remove Reverend Lumpkin from the Commission.

*The Federal Lawsuit*

After his removal from the Commission, Reverend Lumpkin brought suit against Mayor Jordan in state court, but the case was removed to federal court at Mayor Jordan's request. An amended complaint was filed in federal court and the City was added as a party. The first cause of action was alleged under the California Fair Employment and Housing Act (FEHA), barring discrimination in employment decisions on the basis of religion. (See Gov. Code, § 12940.) Reverend Lumpkin alleged that he had been terminated "solely because of his religious beliefs" in violation of the FEHA. The

second cause of action alleged that defendants, acting under color of state law, deprived Reverend Lumpkin of the right to exercise his constitutionally protected religious beliefs as guaranteed by 42 United States Code section 1983.[2] He sought reinstatement to the Commission, compensatory damages, and attorney fees.

The federal court granted summary judgment to Mayor Jordan and the City on all of the causes of action, except for the claims based on FEHA, over which the federal court declined to exercise its supplemental jurisdiction. The state FEHA claims were dismissed without prejudice to refiling in state court.[3]

The operative provisions of the federal opinion granting summary judgment, of which we take judicial notice (Evid. Code, §§ 452, subd. (d), 459), are as follows: Reverend Lumpkin's removal from the Commission did not violate his freedom of expression. The court reasoned that he was a policymaker with the Jordan administration and "Reverend Lumpkin's televised remarks regarding homosexuality could reasonably have been interpreted by the Mayor as undermining the very policies of the Commission to promote good will toward all people."

The court's order further held that Reverend Lumpkin's removal did not violate his rights under the free exercise clause. The court found that Mayor Jordan's interest in preventing disruption of the goals of his administration outweighed Reverend Lumpkin's right to religious expression. The court's opinion points out that "[c]ritical to this analysis is the fact that Reverend Lumpkin was not removed solely for exercising his constitutional rights. He is, and at all times was, free to hold and to profess his religious beliefs; however, when the expression of those beliefs clashed with the goals of the Jordan Administration and undermined the public confidence in the ability of the Commission to effect its goals, the Mayor was justified in removing him."

---

[2]Courts have consistently held that employment discrimination claims against state or municipal employers may be brought under the aegis of 42 United States Code section 1983 where those claims arise from violations of constitutional or statutory rights. (See *Espada* v. *Woodroffe* (D.P.R. 1995) 896 F.Supp. 69, 71; *Brown* v. *Polk County, Iowa* (S.D. Iowa 1992) 811 F.Supp. 432, 435-437.)

[3]Despite Reverend Lumpkin's assertions to the contrary, the federal court's dismissal without prejudice to pursuing his FEHA claim is no reflection on that court's view of the claim's merit. "Although a federal court is not required to dismiss a pendent state claim following dismissal of the federal action on the merits [citation], many courts have held that where the federal claim has been disposed of by pretrial dismissal or summary judgment before there has been substantial expenditure of the court's time and energy on the case, proper exercise of discretion requires dismissal of the state claim without prejudice to the plaintiff's right to litigate them in a state forum." (*Boccardo* v. *Safeway Stores, Inc.* (1982) 134 Cal.App.3d 1037, 1052 [184 Cal.Rptr. 903].)

Finally, the court's order held that Reverend Lumpkin's removal did not violate the establishment clause. The court explained that Reverend Lumpkin's removal could not reasonably be construed as sending a message either endorsing or disapproving of religion and that "his removal was based on secular concerns." The court emphasized that Reverend Lumpkin "was not removed because he believed in the inerrancy of the Bible; rather, he was removed because his religious beliefs were at odds with the goals of the Commission and disrupted Mayor Jordan's administration."

Reverend Lumpkin has appealed from this judgment. His appeal is presently pending before the United States Court of Appeal, Ninth Circuit (No. 95-15006), oral argument having been heard on April 8, 1996.

### The State Action

On or about December 14, 1994, Reverend Lumpkin refiled his FEHA claim against Mayor Jordan and the City in state court. They demurred to the complaint, arguing that the federal summary judgment finding that Reverend Lumpkin's removal from the Commission was motivated by legitimate, as opposed to discriminatory, reasons negated the necessity of a trial on Reverend Lumpkin's state religious discrimination claims. The trial court agreed, indicating the federal order "is final under federal law and operates as collateral estoppel on this Court on the issue of [Reverend Lumpkin's] removal for religious belief. As a matter of law, [Reverend Lumpkin] was removed for a secular purpose and therefore cannot state a claim under the California Fair Employment and Housing Act." Accordingly, the trial court granted the demurrer to Reverend Lumpkin's complaint without leave to amend. This appeal followed.

### Discussion

In general, collateral estoppel (or as it is sometimes known, issue preclusion) precludes a party from relitigating an issue of fact or law if the issue was litigated and decided in a prior proceeding. (*George Arakelian Farms, Inc.* v. *Agricultural Labor Relations Bd.* (1989) 49 Cal.3d 1279, 1289-1290 [265 Cal.Rptr. 162, 783 P.2d 749].)[4] The rules on application of collateral estoppel are found in the Restatement Second of Judgments. Section 27 of the Restatement provides, "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the

---

[4] The doctrine of collateral estoppel is one aspect of the concept of res judicata; however, the two terms have distinct meanings. The United States Supreme Court, for example, describes collateral estoppel as " 'issue preclusion' " and res judicata as " 'claim preclusion.' " (*Migra* v. *Warren City School Dist. Bd. of Ed.* (1984) 465 U.S. 75, 77, fn. 1 [79 L.Ed.2d 56, 59, 104 S.Ct. 892].) This case concerns only issue preclusion.

determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Application of collateral estoppel prevents a litigant from being "subjected to consecutive proceedings raising the same factual allegations." (*Lucido* v. *Superior Court* (1990) 51 Cal.3d 335, 351 [272 Cal.Rptr. 767, 795 P.2d 1223].)

According to California law, collateral estoppel is only applied if several threshold questions are met with an affirmative answer. First, was the issue decided in the prior adjudication identical with the one presented in the action in question? Second, was the issue actually litigated in the prior proceeding and was there a final judgment on the merits? Third, was the party against whom preclusion is sought the same as, or in privity with, the party to the former proceeding? (*Gikas* v. *Zolin* (1993) 6 Cal.4th 841, 849 [25 Cal.Rptr.2d 500, 863 P.2d 745]; *Levy* v. *Cohen* (1977) 19 Cal.3d 165, 171 [137 Cal.Rptr. 162, 561 P.2d 252]; *Long Beach Grand Prix Assn.* v. *Hunt* (1994) 25 Cal.App.4th 1195, 1199 [31 Cal.Rptr.2d 70].) The party asserting collateral estoppel bears the burden of establishing these requirements. (*Lucido* v. *Superior Court, supra*, 51 Cal.3d at p. 341.)

■ We believe each of these questions must be answered in the affirmative. The last requirement, privity, is the most easily established. Reverend Lumpkin was, of course, the plaintiff in the prior federal proceeding based upon the same controversy. The requirement that the decision in the former proceeding be final and on the merits is also satisfied. The summary judgment on the complaint is a judgment on the merits. (See *Calhoun* v. *Franchise Tax Bd.* (1978) 20 Cal.3d 881, 887 [143 Cal.Rptr. 692, 574 P.2d 763]; *Levy* v. *Cohen, supra*, 19 Cal.3d at pp. 172-173; *Columbus Line, Inc.* v. *Gray Line Sight-Seeing Companies Associated, Inc.* (1981) 120 Cal.App.3d 622, 629 [174 Cal.Rptr. 527]; see *Long Beach Grand Prix Assn.* v. *Hunt, supra*, 25 Cal.App.4th at p. 1200.)

■ ■ Furthermore, for collateral estoppel purposes, the federal court's ruling on the summary judgment, even though appealed, must be considered final. "A federal judgment 'has the same effect in the courts of this state as it would have in a federal court.' [Citation.]" (*Younger* v. *Jensen* (1980) 26 Cal.3d 397, 411 [161 Cal.Rptr. 905, 605 P.2d 813].) The federal rule is that " 'a judgment or order, once rendered, is final for purposes of res judicata until reversed on appeal or modified or set aside in the court of rendition.'" (*Calhoun* v. *Franchise Tax Bd., supra*, 20 Cal.3d at p. 887; *Martin* v. *Martin* (1970) 2 Cal.3d 752, 761-762 [87 Cal.Rptr. 526, 470 P.2d

662].)[5] Because the federal court's ruling on the summary judgment has not been reversed or modified, the decision is "final." We are therefore left with the question whether the issue decided in the prior adjudication is identical to the one presented in the instant action.

Reverend Lumpkin argues that the summary judgment obtained by Mayor Jordan and the City in federal court did not decide the issues central to his religious discrimination claim under the FEHA. We disagree. The federal court's detailed opinion, taken as a whole, found legitimate, nondiscriminatory reasons had been established for removing Reverend Lumpkin from the Commission. Among those reasons were preventing disruption to the goals of the Commission and the Jordan administration, of avoiding a public controversy, and of securing a new Commissioner who would more effectively implement those goals. In short, the federal court found that Reverend Lumpkin's discharge from the Commission was prompted by a series of events which called into question Reverend Lumpkin's ability to promote the policies of the entity which he served. Accordingly, the court found Reverend Lumpkin had not presented evidence of a discriminatory motive sufficient to proceed to trial.

It is quite true, as Reverend Lumpkin, so emphatically asserts, that there exists a significant public interest in this state in fully and vigorously enforcing the FEHA, and that the FEHA is intended to provide an independent remedy to redress employment discrimination. However, the doctrine of collateral estoppel depends on what issues are adjudicated, not the nature of the proceeding or the relief requested. (See *People* v. *Sims* (1982) 32 Cal.3d 468, 484-486 [186 Cal.Rptr. 77, 651 P.2d 321].) If the rule were otherwise, "litigation finally would end only when a party ran out of counsel whose knowledge and imagination could conceive of different theories of relief based upon the same factual background." (*Kronkright* v. *Gardner* (1973) 31 Cal.App.3d 214, 216 [107 Cal.Rptr. 270].)

While claims under the FEHA and federal antidiscrimination remedies have their substantive differences, they are generally treated by courts as analogous. (*Easton* v. *Crossland Mortg. Corp.* (C.D.Cal. 1995) 905 F.Supp. 1368; see, e.g., *Flait* v. *North American Watch Corp.* (1992) 3 Cal.App.4th 467 [4 Cal.Rptr.2d 522]; *Fisher* v. *San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 608 [262 Cal.Rptr. 842].) What is significant for collateral estoppel purposes is that the issue decided in the federal proceedings—that Reverend Lumpkin was discharged from the Commission for legitimate,

---

[5]Under California law, a judgment is not final for purposes of collateral estoppel while open to direct attack, e.g., by appeal. (*Abelson* v. *National Union Fire Ins. Co.* (1994) 28 Cal.App.4th 776, 787 [35 Cal.Rptr.2d 13], and cases cited therein.)

nondiscriminatory reasons—is the pivotal factual issue that must be decided in the state FEHA proceedings. Once we give collateral estoppel effect to the prior judicial determination that secular as opposed to religious considerations provided the motivation for Reverend Lumpkin's termination, the outcome of the state FEHA proceedings is preordained.

To the extent that Reverend Lumpkin's arguments go to the correctness of the federal court's ruling, they are misguided. The federal court order is entitled to collateral estoppel effect regardless of our agreement or disagreement with the decision itself. "[R]egardless of the propriety of the summary judgment, it is nonetheless binding since 'for purposes of application of the doctrine of res judicata, an erroneous judgment is as conclusive as a correct one. [Citations.]' " (*White Motor Corp.* v. *Teresinski* (1989) 214 Cal.App.3d 754, 762-763 [263 Cal.Rptr. 26], quoting *Columbus Line, Inc.* v. *Gray Line Sight-Seeing Companies Associated, Inc., supra,* 120 Cal.App.3d 622, 629, fn. 5; *Weil* v. *Barthel* (1955) 45 Cal.2d 835, 839 [291 P.2d 30].) Even if Reverend Lumpkin's analysis of the evidence is correct, it would not change the outcome of this case.

In support of his contention that he retains the right to litigate his FEHA claims in state court, Reverend Lumpkin directs our attention to *Merry* v. *Coast Community College Dist.* (1979) 97 Cal.App.3d 214 [158 Cal.Rptr. 603]. In that case the court held that a federal court's summary judgment dismissing a civil rights action did not preclude a subsequent state court action based upon the same operative facts. In so holding, the court noted that "a refusal to exercise pendent jurisdiction over a state claim following pretrial dismissal of a federal claim does not bar litigation of state claims in the state court." (*Id.* at p. 228.) However, the *Merry* court's reasoning was based on determining the res judicata effect of the federal dismissal, and whether the mere fact that the federal case had been dismissed barred the plaintiff from further litigation under a state law theory. The *Merry* court expressly declined to resolve whether the cause of action asserted by plaintiff in federal court involved the same issues or operative facts as the cause of action asserted in the state action. (*Id.* at p. 227; *Mattson* v. *City of Costa Mesa* (1980) 106 Cal.App.3d 441, 454 [164 Cal.Rptr. 913].) By contrast, our case presents a question of issue preclusion—we are dealing with the collateral estoppel effect of a prior judgment on an admittedly different cause of action. Where dispositive factual issues are actually litigated and resolved in the federal action, the losing party is estopped to relitigate those issues in a subsequent state action, and nothing in *Merry* holds to the contrary. (See, e.g., *Calhoun* v. *Franchise Tax Bd., supra,* 20 Cal.3d at p. 884 [estoppel barred relitigation of issue in the state court when identical issue previously decided in federal action].)

Since the answer to all three pertinent questions is in the affirmative, Mayor Jordan and the City have satisfied their burden of proving the requirements for application of collateral estoppel and Reverend Lumpkin is estopped from pursuing his state action. To prevail in the state action, Reverend Lumpkin would have to prove that Mayor Jordan acted for discriminatory purposes. However, this question of fact has already been resolved against him in the federal proceeding. To subject Mayor Jordan to a second proceeding in state court in which he must defend himself against the very same allegation is unduly burdensome and unjust. We are also concerned with "the possibility of inconsistent judgments which may undermine the integrity of the judicial system . . . ." (*People* v. *Sims, supra,* 32 Cal.3d at p. 488.) Applying the doctrine of collateral estoppel, we hold that this finding is conclusive and cannot be relitigated by Reverend Lumpkin in the state action.

At oral argument, we noted the absence of on-point case law dealing with the facts necessary to prove a religious discrimination claim under the FEHA. By subsequent letter briefing, our attention was directed to *Best* v. *California Apprenticeship Council* (1984) 161 Cal.App.3d 626 [207 Cal.Rptr. 863] (*Best*). *Best* involved a plaintiff who was dismissed from an electrician's apprenticeship program when, due to sincerely held religious beliefs, he refused a required rotation to a company engaged in constructing a nuclear generator station. The court held that under Government Code section 12940 of the FEHA, the apprenticeship program had a duty to accommodate the plaintiff's religious beliefs by assigning him to a different work site. In so holding, the court rejected the program's argument that no discriminatory motive was present, because discriminatory motive was not the determining factor. (*Best, supra,* 161 Cal.App.3d at p. 636.) Reverend Lumpkin reads *Best* as holding that the FEHA provides an "unconditional" remedy for religious discrimination which forecloses any inquiry into whether or not an employer had a discriminatory motive.

*Best* involved an employer's alleged failure to accommodate an employee's religious beliefs—a completely different type of religious discrimination claim than is alleged herein. Our case involves a personnel decision that was allegedly made on the basis of religious discrimination per se. As we view the matter, when a claimant in a case, such as Reverend Lumpkin, alleges that he was terminated because of religious discrimination, he must establish a discriminatory motive and action taken in furtherance of that motive in order to prove causation.

This point is best illustrated by *Hollon* v. *Pierce* (1967) 257 Cal.App.2d 468 [64 Cal.Rptr. 808] (*Hollon*). In *Hollon* a school bus driver sought relief

from the State Fair Employment Practice Commission after he was discharged because his name appeared on a religious tract, several passages of which alluded to the burning of school houses and the murdering of school children. Although Hollon had not written the tract, he admitted to believing the philosophy advanced in the work. Hollon brought suit for reinstatement, attacking his dismissal as being based upon religious discrimination. The court rejected Hollon's discrimination claim, primarily relying on the fully supported finding that Hollon's dismissal was "based solely" on the school board's honest belief that he was unfit for his assignment because he could not be trusted with the safety of his passengers. (*Id.* at p. 477.) In upholding Hollon's discharge, the court expressly distinguished a situation where an investigation of competence is undertaken to cloak an act of religious bias, indicating that such a discriminatory action would not be tolerated. By contrast, "for all practical purposes, the unimpeached finding that the employer honestly believed the employee to be unfit forecloses any claim of constitutional trespass." (*Id.* at p. 478.) Consequently, the employer's "[g]ood faith plays a role." (*Id.* at p. 477.) Thus, in reviewing the federal court's determination that Reverend Lumpkin was not a victim of religious discrimination, the federal court's finding that the City acted with no discriminatory motive precludes Reverend Lumpkin's ability to proceed with his discrimination claim in a state forum.

The judgment is affirmed.

Peterson, P. J., and Haning, J., concurred.