Filed 4/11/14  Chaparro v. Nepomuceno CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| GLORIA CHAPARRO et al., | B248429 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. KC062198) |
| v. | |
| ARLENE NEPOMUCENO, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Dan Thomas Oki, Judge.  Reversed.

Susan M. Mogilka for Plaintiffs and Appellants.

Taylor Blessey, N. Denise Taylor and Erica A. Levitt for Defendant and Respondent.

_____

Gloria Chaparro (Gloria) and David Chaparro (David) (collectively the Chaparros) appeal the summary judgment entered in favor of respondent Dr. Arlene Nepomuceno on Gloria's claim for medical malpractice and David's bystander claim for emotional distress. There are triable issues regarding breach of the duty of care, causation and damages because the parties offered competing declarations from medical experts. Moreover, *Chaparro v. Cimmarusti* (Dec. 31, 2013) B244757 [nonpub. opn.] (*Chaparro I*) does not trigger the collateral estoppel doctrine and preclude a finding of causation. Finally, there are triable issues regarding David's bystander claim. We reverse.

## FACTS

### The Complaint

On September 27, 2011, Gloria sued Dr. Jerry Cimmarusti, a physician's assistant named Renee Parrilla (Parrilla), Doe 10, various other Doe defendants, and Magan Medical Clinic, Inc. (Magan) for medical malpractice. David sued them for bystander recovery.

The complaint alleged:

Dr. Cimmarusti, Parrilla and Doe 10 were employed by or under contract with Magan. On July 7, 2010, David took Gloria to the Urgent Care Clinic operated by Magan because she was coughing up blood and had shortness of breath. She was examined by Parrilla. After the examination, Gloria coughed up blood in the parking lot and returned to the Urgent Care Clinic and asked for further evaluation. She was told to go home and wait for a CT scan that had been scheduled for the following week. Gloria's condition got worse. On July 17, 2010, David took Gloria to an emergency room and she was admitted to the hospital. A CT scan revealed the presence of a large mass in her chest. The mass was an empyema, a large collection of pus in the space between the lung and the inner surface of the chest wall. On July 23, 2010, Gloria underwent a thoracentesis to remove the empyema. Magan is vicariously liable for the negligence of Doe 10, Dr. Cimmarusti and Parrilla. Those three, and various other Doe defendants, breached the standard of care by failing to diagnose and treat Gloria's illness

2

on a timely basis. David alleged that he suffered emotional distress when he saw Gloria being injured.

**The July 3, 2012, Motion for Summary Judgment by Dr. Cimmarusti, Parrilla and Magan**

Dr. Cimmarusti, Parrilla and Magan submitted a motion for summary judgment supported by the declaration of Dr. Abraham Ishaaya. He reviewed the relevant medical records and noted, among other things, that Gloria was seen on July 9, 2010, by Dr. Nepomuceno. He opined, inter alia, that Dr. Cimmarusti, Parrilla and other healthcare providers at Magan "appropriately evaluated [Gloria] and arranged the appropriate follow up. Nothing that any of the above noted healthcare providers did or did not do contributed to the rapid progression of the findings seen on [Gloria's] chest x-ray and the development of empyema."

**The July 10, 2012, Doe Amendment**

The Chaparros substituted Dr. Nepomuceno's name into the complaint in place of the fictitious name of Doe 10.

**The Chaparros' Opposition to the Motion for Summary Judgment by Dr. Cimmarusti, Parrilla and Magan**

To defeat summary judgment, the Chaparros' offered a competing declaration from Dr. Paul K. Bronston opining that to a reasonable degree of medical certainty, "standards of care were breached in the evaluation of care of [Gloria] at [Magan]." He specifically noted that Gloria was taken to Magan on July 9, 2010, and "was seen by a physician who found her to be weak and dizzy." Dr. Bronston then noted: "In spite of [Gloria's] obvious worsening condition, the physician did not check [Gloria's] oxygen saturation level. No chest x-ray was done. The physician simply sent [Gloria] home with an appointment to see her primary doctor in another week. As [previously] explained . . . , this violated standards of care." Dr. Bronston did not offer an opinion as to whether any healthcare provider caused damages.

3

**The September 24, 2012, Summary Judgment for Dr. Cimmarusti, Parrilla and Magan**

At oral argument on the motion by Dr. Cimmarusti, Parrilla and Magan, the trial court ruled that there was no triable issue as to causation because the Chaparros did not have an expert on that issue. Counsel for the Chaparros argued that because they were alleging that the failure to treat Gloria's empyema caused pain and suffering, an expert on causation was unnecessary. The trial court granted the motion for summary judgment and entered judgment accordingly.

The Chaparros appealed.

**Dr. Nepomuceno's December 24, 2012, Motion for Summary Judgment**

Dr. Nepomuceno moved for summary judgment on the grounds that there were no triable issues of fact regarding whether she breached the standard of care or caused damages. Dr. Ishaaya provided an accompanying expert declaration in which he opined that Dr. Nepomuceno met the standard of care on July 9, 2010, and was not responsible for causing Gloria to suffer any damages. In the alternative, Dr. Nepomuceno argued that the Chaparros' action against her was barred by collateral estoppel due to the summary judgment granted in favor of Dr. Cimmarusti, Parrilla and Magan. Dr. Nepomuceno pointed out that in connection with the prior motion, the trial court had ruled as follows: "[T]o a reasonable degree of medical probability no act or omission o[n] the part of [Dr. Cimmarusti], [Parrilla], or any other healthcare provider at [Magan] caused or contributed to or was a substantial factor in causing any injuries or damages to [Gloria]."

With respect to David, Dr. Nepomuceno argued that he could not establish the elements of his bystander claim.

**The Chaparros' Opposition to the Motion for Summary Judgment by Dr. Nepomuceno**

In opposition, the Chaparros offered the declaration of Dr. Angelique S. Campen. She declared that Parrilla was not qualified to diagnose Gloria on July 7, 2010, and breached the standard of care when she did not consult with or call a physician. Dr. Nepomuceno breached the standard of care by failing to diagnose pneumonia and

4

start Gloria on antibiotics when she presented on July 9, 2010, to Magan with hemoptysis (coughing up blood). Her breaches "substantially contributed to an overall 10-day delay in the diagnosis and treatment of pneumonia and this delay proximately caused [Gloria] to develop an empyema which could have been avoided[.]" In addition, Dr. Nepomuceno's breaches "were a substantial factor in causing [Gloria] pain and suffering associated with having to undergo thoracentesis and open chest surgery to remove the empyema[.]" Dr. Campen based her opinion, inter alia, on the following. Dr. Nepomuceno should have known that a patient who presents within days with the same or a worsening condition is a hallmark of disease escalation, and she should have reviewed the findings from the prior visit, performed a complete physical and gotten a basic chest x-ray. Three days later, Dr. Cimmarusti ordered a chest x-ray that revealed the presence of multiple infiltrates indicative of pneumonia. He gave Gloria a prescription for doxycycline, "which is not appropriate broad-spectrum coverage for pneumonia." Empyema "can develop from untreated pneumonia. . . ." Gloria's "empyema was caused by untreated bacterial pneumonia which was her only risk factor for its development." Dr. Campen concluded: "Within a reasonable degree of medical probability, the breaches in the standards of care explained above including those by Dr. Nepomuceno, caused and contributed to at least 10 days of delay in proper diagnosis and treatment of pneumonia which further proximately caused an empyema to develop."

As to David, the Chaparros argued that he established a triable issue regarding his bystander claim because the evidence showed that he was present at each encounter Gloria had at Magan. On July 9, 2010, Gloria coughed up blood into his hand after she was seen by Dr. Nepomuceno; Dr. Nepomuceno turned Gloria away when she tried to be seen a second time; and Dr. Nepomuceno refused David's request that Gloria be given a second opinion and sent to the hospital.

The Chaparros argued that the collateral estoppel argument should be rejected because the doctrine curtails subsequent litigation in a second action and the claim against Dr. Nepomuceno was not asserted in a second action; Dr. Nepomuceno did not

refer to the relevant facts in her separate statement; and she did not allege collateral estoppel as an affirmative defense in her answer.

**Dr. Nepomuceno's Reply**

In her reply, Dr. Nepomuceno argued that the Chaparros failed to establish a triable issue as to causation. She did not analyze the collateral estoppel issue, nor did she analyze David's bystander claim.

**The March 14, 2013, Summary Judgment for Dr. Nepomuceno**

The trial court granted Dr. Nepomuceno's motion on the grounds that there was no triable issue as to causation. Specifically, the trial court concluded that Dr. Campen failed to establish that Dr. Nepomuceno's negligence "was in and of itself sufficient to bring about [Gloria's] injuries." David's bystander claim was rejected because it was derivative of Gloria's claim.

The collateral estoppel argument was rejected. In its tentative ruling, which was adopted as part of the order granting summary judgment, the trial court cited case law establishing that collateral estoppel applies only to a later filed action. The trial court then stated that "based on the above authorities and [Dr. Nepomuceno's] failure to assert the defense[], this court finds that . . . collateral estoppel does not preclude the instant action against Dr. Nepomuceno[.]"

Judgment was entered for Dr. Nepomuceno.

This timely appeal followed.

**Our Opinion in *Chaparro I***

In connection with their appeal of the summary judgment entered in favor of Dr. Cimmarusti, Parrilla and Magan, the Chaparros argued that an expert declaration was not necessary to establish causation. We disagreed. On December 31, 2013, we issued an opinion affirming summary judgment.

6

The Chaparros contend that summary judgment was improper because there are triable issues as to causation. Dr. Nepomuceno argues that collateral estoppel applies due to the summary judgment entered in favor of Dr. Cimmarusti, Parrilla and Magan, and that David's bystander claim lacks merit. Our review is de novo. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)

## I. Causation.

In the law, a cause of injury is defined as anything that is a substantial factor in bringing about that injury. (*Espinosa v. Little Co. of Mary Hospital* (1995) 31 Cal.App.4th 1304, 1314.) "'The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical.' [Citation.] Thus, 'a force which plays only an "infinitesimal" or "theoretical" part in bringing about injury, damage, or loss is not a substantial factor' [citation], but a very minor force that does cause harm is a substantial factor [citation]. This rule honors the principle of comparative fault. [Citation.]" (*Bockrath v. Aldrich Chemical Co.* (1999) 21 Cal.4th 71, 79.)

A plaintiff who is litigating a medical malpractice action must provide competent expert testimony establishing a reasonable medical probability that the defendant caused the plaintiff's injury. (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1118 (*Jennings*).) That said, an expert "does not possess a carte blanche to express any opinion within the area of expertise. [Citation.] For example, an expert's opinion based on assumptions of fact without evidentiary support [citation], or on speculative or conjectural factors [citation], has no evidentiary value [citation] and may be excluded from evidence. [Citations.] Similarly, when an expert's opinion is purely conclusory because unaccompanied by a reasoned explanation connecting the factual predicates to the ultimate conclusion, that opinion has no evidentiary value because an 'expert opinion is worth no more than the reasons upon which it rests.' [Citation.]" (*Id.* at p. 1117; *Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 525 [summary judgment standard is "not satisfied by laconic expert declarations which provide only an

7

ultimate opinion, unsupported by reasoned explanation"]; *McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098, 1106 ["Plaintiffs cannot manufacture a triable issue of fact through use of an expert opinion with self-serving conclusions devoid of any basis, explanation, or reasoning"].)

Read fairly, Dr. Campen's declaration opined that Gloria was ill on July 7, 2010, and her illness escalated within several days; on July 9, 2010, Dr. Nepomuceno should have diagnosed Gloria with bacterial pneumonia and given her proper antibiotics; doxycycline, prescribed by Dr. Cimmarusti on July 12, 2010, was not an appropriate treatment; Gloria's empyema was caused by a 10-day delay in the proper treatment of her bacterial pneumonia; if Gloria had received proper treatment earlier, her epyema would have been avoided; and Dr. Nepomuceno's breaches of the standard of care caused and contributed to Gloria's empyema to a reasonable medical certainty.

In our view, Dr. Campen's declaration passes muster because she provided a factual basis for her opinion, which was that the empyema developed, in part, because Dr. Nepomuceno did not prescribe Gloria with proper antibiotics on July 9, 2010. Despite Dr. Nepomuceno's contention, Dr. Campen's declaration is not akin to the evidence found deficient in *Jennings*. The doctor in *Jennings* "testified that, if a constellation of events had coalesced, the retractor could have provided a nidus for bacteria to grow inside Jennings's peritoneal cavity during the window of time ending when the retractor became encased by the omentum." (*Jennings*, *supra*, 114 Cal.App.4th at p. 1119.) Next, the doctor testified "that bacteria growing around the retractor were a cause-in-fact of the infection." (*Ibid*.) The court concluded that the testimony "was not helpful to the jury absent additional evidence that it was more likely than not that bacteria growing around the retractor migrated to and were a cause-in-fact of the infection in the subcutaneous tissue," and that the "opinion was too conclusory to satisfy the requirements for admissibility. [Citation.]" (*Id*. at pp. 1119–1120.) In particular, the doctor never explained why it was "more likely than not that the bacteria, after multiplying without any clinical symptoms that ordinarily accompany peritonitis, migrated from the nidus within the peritoneal cavity through the sutured peritoneal wall,

8

the transversalis fascia, the muscle group and the rectus fascia, finally settling into the subcutaneous tissue, while leaving the peritoneal wall intact and leaving behind no trail of inflamed or infected tissue evidencing this migration. Instead, [the doctor] substituted a conclusion in place of an explanation, opining '[i]t just sort of makes sense. We have that ribbon retractor and [it's] contaminated, he's infected.'" (*Id.* at p. 1120.) Here, the concepts involved are less complicated because the issue is not how and whether Dr. Nepomuceno caused an infection, but whether she properly treated an infection. If an ailment is not properly treated, it is logical to conclude that the lack of proper treatment was the very thing that caused the ailment to escalate.

Nor is this case similar to *Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493 (*Bushling*). In that case, two doctors "were of the opinion that plaintiff's injury was caused by defendants' negligence in that 'more probably than not,' plaintiff had been dropped, his arm had been improperly positioned during surgery, or his arm had been stretched." (*Id.* at p. 510.) The court rejected the opinions, stating: "The difficulty that plaintiff encounters in his attempt to avoid summary judgment by relying on the [doctors'] opinions is that there is no evidence that plaintiff was dropped, that he was improperly positioned, or that his arm was stretched during the procedure or recovery. The doctors assume the cause from the fact of the injury. [Their] opinions are nothing more than a statement that the injury could have been caused by defendants' negligence in one of the ways they specify. But, 'an expert's opinion that something *could* be true if certain assumed facts are true, without any foundation for concluding those assumed facts exist' [citation], has no evidentiary value. [Citation.]" (*Ibid.*) Contrasting, we note that Dr. Campen did not assume that one of several unproven causes of Gloria's injury might have occurred. Rather, Dr. Campen opined that the empyema was caused by Dr. Nepomuceno's failure to treat Gloria's bacterial pneumonia with proper antibiotics on July 9, 2010. That opinion was based on the undisputed facts that Gloria exhibited symptoms of illness and Dr. Nepomuceno did not provide treatment.

Dr. Nepomuceno argues that there was no evidence that her negligence, by itself, caused injury. We cannot concur. Dr. Campen opined that if Dr. Nepomuceno had met

the standard of care and prescribed the proper treatment on July 9, 2010, then Gloria would not have had an empyema. This meets the substantial factor test. It does not matter that Parrilla and Dr. Cimmarusti might also be at fault. Next, Dr. Nepomuceno contends that summary judgment was proper because she did not cause a 10-day delay in treatment which, according to Dr. Campen, caused the empyema. At most, argues Dr. Nepomuceno, she caused a three-day delay because Dr. Cimmarusti identified Gloria's pneumonia on July 12, 2010, and prescribed antibiotics. Once again, we cannot concur. According to Dr. Campen, Dr. Cimmarusti prescribed the wrong antibiotics and Gloria did not obtain proper treatment until after she went to the hospital. Thus, per Dr. Campen, Dr. Nepomuceno contributed to an over-all 10-day delay in Gloria receiving proper treatment.

## II. Collateral Estoppel.

Dr. Nepomuceno argues that we should affirm the summary judgment granted in her favor based on the collateral estoppel effect of the summary judgment granted in favor of Dr. Cimmarusti, Parrilla and Magan. We disagree.

Collateral estoppel applies if the party against whom the doctrine is asserted was a party or in privity with a party in a previous proceeding (*Rodgers v. Sargent Controls & Aerospace* (2006) 136 Cal.App.4th 82, 90 (*Rodgers*)), and if the advocating party establishes the following: "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.' [Citation.] Even if these threshold requirements are satisfied, the doctrine will not be applied if such application would not serve its underlying fundamental principles. [Citation.]" (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 848–849.)

At the time the trial court ruled on Dr. Nepomuceno's motion, she could not have established the elements of collateral estoppel because the motion was brought in the

same action as the summary judgment for Dr. Cimmarusti, Parrilla and Magan. Also, the summary judgment for Dr. Cimmarusti, Parrilla and Magan was not final because the matter was on appeal. (*Lumpkin v. Jordan* (1996) 49 Cal.App.4th 1223, 1231, fn. 5 ["Under California law, a judgment is not final for purposes of collateral estoppel while open to direct attack, e.g., by appeal"]; *Long Beach Unified Sch. Dist. v. State of California* (1990) 225 Cal.App.3d 155, 169 ["A decision will not be given collateral estoppel effect if [an] appeal has been taken"].) Finally, preventing the Chaparros from litigating the adequacy of Dr. Campen's declaration will not serve the underlying fundamental principles of collateral estoppel, i.e., preserving the integrity of the judicial system and protecting opposing parties from vexatious litigation. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 339.) Because the motion for summary judgment by Dr. Cimmarusti, Parrilla and Magan involved the adequacy of Dr. Bronston's declaration and the motion by Dr. Nepomuceno involved the adequacy of Dr. Campen's declaration, the latter motion did not threaten the integrity of the judicial system by asking the trial court to decide the same issue twice. And because the Chaparros did not seek to litigate the same issue twice, they were not being vexatious.

## III. David's Bystander Claim.

Insofar as the trial court granted summary judgment against David solely because Gloria's claim lacked merit and his bystander claim for negligent infliction of emotional distress (NIED) was derivative, that was error. We could, of course, affirm summary judgment against David if it was supported by a legal theory not reached by the trial court, but we would have to exercise our discretion to reach the issue. (Code Civ. Proc., § 437c, subd. (m)(2).) We choose not to.

In reaching this conclusion, we note the following. Dr. Nepomuceno urges us to conclude that David's bystander claim is barred because he could not have been contemporaneously aware of an injury-producing event during Gloria's visit to Magan on July 9, 2010. The law provides "'that a plaintiff may recover damages for emotional distress caused by observing the negligently inflicted injury of a third person if, *but only if*, said plaintiff: (1) is closely related to the injury victim; (2) is present at the scene of

11

the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress—a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances.' [Citation.]" (*Bird v. Saenz* (2002) 28 Cal.4th 910, 915.) "Except in the most obvious cases, a misdiagnosis is beyond the awareness of lay bystanders." (*Id*. at p. 917.) In general, "courts have not found a layperson's observation of medical procedures to satisfy the requirement of contemporary awareness of the injury-producing event." (*Id*. pp. 917–918.) But "[t]his is not to say that a layperson can never perceive medical negligence, or that one who does perceive it cannot assert a valid claim for NIED. To suggest an extreme example, a layperson who watched as a relative's sound limb was amputated by mistake might well have a valid claim for NIED against the surgeon. Such an accident, and its injury-causing effects, would not lie beyond the plaintiff's understanding awareness. But the same cannot be assumed of medical malpractice generally." (*Id*. at p. 918.)

The problem for Dr. Nepomuceno, at least for purposes of this appeal, is that she did not adequately develop her argument. She provided only a single record citation to two lines in David's deposition in which he denied having medical training. And she did not analyze whether damages for an NIED claim could be supported by the evidence of what David actually witnessed.

**DISPOSITION**

The judgment is reversed.

The Chaparros are entitled to their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, Acting P. J.
　　　　　ASHMANN-GERST

We concur:

_____, J.
　　　CHAVEZ

_____, J.[*]
　　　FERNS

---

[*]　　Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.